**Rodney ARNETT, Plaintiff,**

v.

**UNITED STATES of America, Defendant (Two Cases).**

Nos. 94–4140–SAC, 94–4040–SAC.

United States District Court, D. Kansas.

May 28, 1996.

Justice B. King, Fisher, Patterson, Sayler & Smith, Topeka, KS, for plaintiff.

Virginia Navarrete Brooks, Office of Special Litigation Tax Division, Washington, DC, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

On April 29, 1991, the Internal Revenue Service assessed Rodney Arnett a total penalty under 26 U.S.C. § 6672 in the amount of $21,591.72. In these cases, Arnett and the United States government are embroiled in a battle concerning Arnett's liability under § 6672 for certain unpaid employment withholding taxes of TSP, Inc., a company in which Arnett acted as, *inter alia,* vice-president and secretary.

### History of the Dispute

On July 26, 1993, Arnett commenced his first lawsuit against the United States regarding the April 29, 1991, assessment. On February 18, 1994, this court entered a memorandum and order denying United States' motion to dismiss Arnett's claim for failure to exhaust his administrative remedies. *See Arnett v. United States,* 845 F.Supp. 796 (D.Kan.1994). However, concerned that Arnett had not exhausted his administrative remedies, the court entered an order requiring the parties to file additional briefs regarding the court's jurisdiction to consider the case. On April 1, 1994, rather than attempt to satisfy the court's February 18, 1994, memorandum and order, Arnett and the United States reached an agreement stipulating to the dismissal without prejudice of all of Arnett's claims, each party to bear its own costs.

Arnett subsequently filed a second and third lawsuit against the United States regarding the April 29, 1991, assessment. On May 11, 1995, the court entered a memorandum and order granting the United States' motion to dismiss Arnett's claim based upon 26 U.S.C. § 7433. *See Arnett v. United States,* 889 F.Supp. 1424 (D.Kan.1995). Based upon its review of all of the pleadings filed by Arnett, including his original complaint and "amended and supplemental complaint" in Case No. 94–4040–SAC, it appeared to the court that Arnett had for whatever reason abandoned his refund claim pursuant to 26 U.S.C. § 7422 and his claim for attorney's fees pursuant to 26 U.S.C. § 7430. Consequently, the court instructed the clerk of the court to enter judgment in favor of the United States.

Arnett subsequently filed a motion to alter or amend. In his motion, Arnett contended that the court had misconstrued § 7433. Arnett also contended that he did not intend to abandon his § 7422 refund claim or his claim for attorney's fees. In a memorandum and order entered on November 8, 1995, the court denied Arnett's motion to the extent

that he contended that the court had improperly construed § 7433. *See Arnett v. United States,* 910 F.Supp. 515, 517–518 (D.Kan. 1995). However, in light of the fact that the government did not oppose Arnett's desire to pursue his refund claim, the court set aside the judgment and permitted Arnett to pursue his refund claim and his claim for attorney's fees. 910 F.Supp. at 517. In that memorandum and order, the court permitted the parties to file motions for summary judgment regarding the outstanding claims.

Pending before the court are cross-motions for summary judgment:

Rodney Arnett's "Motion for Summary Judgment" (Dk.45).[1]

The United States' "Motion for Summary Judgment" (Dk.42).

Each party has filed a response.

### Arguments of the Parties

Arnett contends that he is not liable under § 6672 as he was not a "responsible person" within the meaning of that section. According to Arnett, William Anderson, the president of TSP, was and is the person responsible for the unpaid withholding taxes. Alternatively, Arnett contends that even if he was a "responsible person" within the meaning of § 6672, his failure to pay the withholding taxes was not willful. Arnett seeks (1) a determination that the United States' assessment of a 100% penalty was wrongful; (2) a refund of the $6,013.40 that the IRS has collected from him to date; and (3) a finding that the United States' position in this case was not substantially justified, therefore entitling him to recover his reasonable attorney's fees pursuant to 26 U.S.C. § 7430.

The government contends that Arnett was properly assessed the penalty pursuant to § 6672. Based upon Tenth Circuit precedent, the government contends that Arnett was a responsible person within the meaning of § 6672 and that his failure to pay those taxes was wilful. In its counterclaim, the United States seeks judgment in the amount of the unpaid balance of the assessment, plus statutory interest from the date of the assessment.

### Summary Judgment Standards

A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

The movant's burden under Rule 56 of the Federal Rules of Civil Procedure is to lay out the basis of its motion and to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "A movant is not required to provide evidence negating an opponent's claim." *Committee for First Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir.1992) (citation omitted).

If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.,* 939 F.2d 887, 891 (10th Cir.1991); *see Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) ("If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-

---

**1.** On May 21, 1996, the court entered an order denying the plaintiff's motion for summary judgment without prejudice. *See* (Dk.52). The court, sua sponte, sets aside that order and considers the plaintiff's motion on the merits.

moving party's case."). When the nonmoving party will have the burden of proof at trial, " 'Rule 56(e) ... [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir.1992) (citations omitted); *see Martin,* 3 F.3d at 1414 (non-moving party cannot rest on the mere allegations in the pleadings). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928, 929 (7th Cir.1995); *see Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993) ("Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice."). The court views the evidence of record and draws inferences from it in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.,* 849 F.2d at 1273.

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins. Corp.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

### Uncontroverted Facts

When confronted with cross-motions for summary judgment, the court endeavors to streamline the uncontroverted facts into a singular account. Although the court has considered all of the facts presented, the court will only set forth the facts necessary to its decision.

TSP was a Kansas corporation, organized by William B. Anderson to develop, design, and market a wireless tail light. The corporation operated out of Topeka, Kansas. During the tax periods in issue, William E. Anderson was the president of TSP. During the tax periods in issue, Arnett was the vice president and the secretary of TSP. Arnett was employed at TSP at a starting salary of $60,000 per year.

Arnett was informed by Anderson that his duties would consist of assisting in the development, manufacture and marketing of the wireless tail lights. Included within those duties, Arnett was responsible for sales, promotions and administration and other related activities pertaining to the wireless tail light. Prior to manufacturing the wireless tail light, Arnett participated in the decision to relocate the offices of TSP from the Merchants National Bank Building to Forbes Field in Topeka, Kansas. During the tax periods in issue, Arnett reported the hours worked by TSP's employees to the corporation's accountants. During that same time frame, Arnett balanced TSP's check book and maintained an accounts payable ledger to monitor the obligations owed to the corporation's suppliers. Arnett participated in the hiring and firing of TSP employees.

From TSP's only checking account, Arnett signed checks in payment of corporate obligations. Arnett signed payroll checks. Arnett had signatory authority to sign checks in amounts not exceeding $500 from May 1, 1989, and in amounts not exceeding $1,000 during the first quarter of 1990, through August 13, 1990. Checks in excess of those amounts required dual signatures. Arnett had the discretion to pay small items that did not require dual signatures. Between June 30, 1989, and June 30, 1990, $118,250.46 in checks were written on behalf of TSP. A total of $82,359.92 worth of those checks were either written solely by Anderson or had the joint signatures of Anderson and Arnett. Arnett issued checks on his signature alone in the amount of $35,890.54.

Although Arnett had numerous managerial duties concerning the daily operation of TSP,

Arnett contends that he had nothing to do with the payment of withholding taxes. Arnett contends that the responsibility to account for and pay employee withholding taxes was solely the responsibility of Anderson. Anderson and another TSP employee also agree that Arnett's duties did not include the responsibility of accounting for or paying TSP's withholding taxes. Within the corporate structure, Anderson was apparently in charge of all of TSP's tax records.

During the tax periods in issue, Arnett made loans to the corporation to continue its operations, including the payment of its payroll. Due to TSP's poor financial condition, in January 1990, Arnett discontinued taking a salary from the corporation.

In September or October of 1989 Arnett was inadvertently given "a notice with respect to overdue taxes" by a TSP clerical secretary. After receiving the notice, Arnett spoke to Anderson "and let [Anderson] know that [he] was upset, and that, in [his] opinion, [Anderson] shouldn't screw around with the government." Anderson apparently indicated that he would take care of the payroll tax liabilities.

After that discussion with Anderson, Arnett continued to sign TSP checks. Arnett tendered his resignation from the corporation on August 15, 1990.

On April 29, 1991, Arnett was assessed a penalty in the amount of $21,590.72, based upon the government's finding that he was a responsible person who willfully failed to collect, truthfully account for, or pay over to the United States the withheld employee income and FICA taxes due from TSP for the quarters ended June 30, 1989, through June 30, 1990. Since the April 29, 1991, assessment, the government has apparently collected the sum of $6,013.40, leaving an unpaid balance in the amount of $15,577.32.

### 26 U.S.C. § 6672

A brief overview of the withholding requirements imposed by federal law is necessary to understand the operation of § 6672:

The Internal Revenue Code requires employers to withhold federal social security and income taxes from their employees' wages as those wages are paid. 26 U.S.C. §§ 3102(a) & 3402(a); *Bowlen v. United States,* 956 F.2d 723, 726 (7th Cir.1992).

Because the employer is only required to pay over the taxes quarterly, the accumulated withholdings are deemed to constitute a "special fund in trust for the United States." 26 U.S.C. § 7501(a); *Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). Once the employer withholds taxes from an employee's wages, the withholdings are credited to the employee regardless of whether they are paid over to the government; therefore, "the IRS has recourse only against the employer for their payment." *Id.*

*Finley v. United States,* 82 F.3d 966, 970 (10th Cir.1996).

"One of the IRS's most effective tools for ensuring it receives withheld trust-fund taxes is 26 U.S.C. § 6672, which creates personal liability for persons within an employer's business who are responsible for collecting and paying over the withheld taxes but willfully fail to do so." *Id.* In pertinent part, § 6672 provides:

(a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

"Section 6671(b) defines 'person' for purposes of § 6672 as 'an officer or employee of a corporation ... who ... is under a duty to perform the act in respect of which the violation occurs.'" *Taylor v. I.R.S.,* 69 F.3d 411, 413 n. 1 (10th Cir.1995).

"The § 6672 penalty may be assessed against (1) any responsible person (2) who has willfully failed to collect, account for, or pay over federal employment taxes." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993).

### Burden of Proof

"Once the IRS assesses a putatively responsible person with a penalty under

§ 6672, that person bears the burden of showing by a preponderance of the evidence either he was not a responsible person or he did not act willfully." *Finley,* 82 F.3d at 970–71.

### Responsible Person

▮ "Courts have generally given broad interpretation to the term 'responsible person' under section 6672." *Denbo v. United States,* 988 F.2d 1029, 1032 (10th Cir. 1993). "A person is responsible within the meaning of the statute if that person is required to collect, truthfully account for or pay over any taxes withheld from the wages of a company's employees." *Id. (citing Slodov v. United States,* 436 U.S. 238, 250, 98 S.Ct. 1778, 1786, 56 L.Ed.2d 251 (1978)). "The responsible person generally is, but need not be, a managing officer or employee." *Denbo,* 988 F.2d at 1032.

▮ In *Taylor v. I.R.S.,* 69 F.3d 411 (10th Cir.1995), the Tenth Circuit discussed the criteria for determining whether an individual is a "responsible person" within the meaning of § 6672:

"[A] corporate officer or employee is responsible if he or she has significant, though not necessarily exclusive, authority in the 'general management and fiscal decisionmaking of the corporation.'" *Denbo,* 988 F.2d at 1032 (*quoting Kizzier v. United States,* 598 F.2d 1128, 1132 (8th Cir. 1979)). In this circuit, we have set forth a non-exclusive list of factors demonstrating "indicia of responsibility." Specifically, we examine whether the person: (1) held corporate office; (2) controlled financial affairs; (3) had authority to disburse corporate funds; (4) owned stock; and (5) had the ability to hire and fire employees. *Id.* If an individual possesses sufficient indicia of responsibility, he is a "responsible person" under § 6672 regardless whether he: (1) has the final say as to which creditors should be paid, *Bowlen v. United States,* 956 F.2d 723, 728 (7th Cir.1992); *Gephart v. United States,* 818 F.2d 469, 475 (6th Cir.1987); or (2) has the specific job within the corporate structure to see that the taxes are paid over to the government, *see Denbo,* 988 F.2d at 1032; *McGlothin v. United States,* 720 F.2d 6, 8 (6th Cir.1983) ("[I]t is not necessary that a [responsible] person be the one who prepared the tax returns, kept the books and records, paid the wages or withheld the taxes."). "The crucial inquiry is whether the person had the 'effective power' to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." *Barnett [v. I.R.S.],* 988 F.2d [1449] at 1454 [ (5th Cir.1993) ]. Liability under § 6672 extends to all responsible corporate officers or employees, not just to the single "most" responsible individual. *Turnbull v. United States,* 929 F.2d 173, 178 (5th Cir. 1991).

69 F.3d at 416. "[T]here may be more than one responsible person." *Denbo,* 988 F.2d at 1032.

### Willfulness

▮ "Willfulness, in the context of section 6672, means a 'voluntary, conscious and intentional decision to prefer other creditors over the Government.'" *Denbo,* 988 F.2d at 1033 (*quoting Burden v. United States,* 486 F.2d 302, 304 (10th Cir.1973), *cert. denied,* 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974)).

Generally, a responsible person's failure to pay over withholding taxes may be described as willful under two theories. First, under what might be called a theory of actual knowledge or intent, a responsible person's conduct is willful if that person " 'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes.' " *Olsen v. United States,* 952 F.2d 236, 240 (8th Cir.1991) (*quoting Hartman v. United States,* 538 F.2d 1336, 1341 (8th Cir.1976)); *see also Burden v. United States,* 486 F.2d 302, 304 (10th Cir.1973) (" 'Willfully' [in §] 6672 … means a voluntary, conscious and intentional decision"), *cert. denied,* 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974). Second, a responsible person can also act willfully if she "acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Mazo v. United States,* 591 F.2d 1151, 1154

(5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Denbo v. United States,* 988 F.2d 1029, 1033 (10th Cir.1993) (same); *see also Thomsen v. United States,* 887 F.2d 12, 17 (1st Cir. 1989) (recognizing that "in the civil context 'willful conduct ... may ... indicate a reckless disregard for obvious or known risks' " (*quoting Monday v. United States,* 421 F.2d 1210, 1215 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970))).

*Finley,* 82 F.3d at 971.

■■■■■ "As this circuit and others have held, '[a] responsible person's failure to investigate or to correct mismanagement after being notified that withholding taxes have not been paid satisfies the section 6672 willfulness requirement.' " *Finley,* 82 F.3d at 972 (*quoting Denbo,* 988 F.2d at 1033). "It is now clear the rule is not triggered unless the responsible person received actual notice withholding taxes were not being remitted." *Id.* at 973. "After receiving actual notice, a responsible person takes on an affirmative obligation to act." *Id.* "The precedent contemplates two alternative ways by which a responsible person may satisfy this obligation. First, he can 'investigate.' Second, he can 'correct the mismanagement.' " *Id.* "Once a responsible person becomes aware that withholding taxes have not been remitted, he may not fulfill his obligation to address the delinquency by delegating the task to someone who has already proven unreliable or untrustworthy." *Id.*

## Analysis

■■■ Based upon the uncontroverted facts, the court is reluctantly compelled to conclude that Arnett was a responsible person within the meaning of § 6672 and that he willfully failed to collect, account for, or pay over federal employment taxes.

Despite Arnett's self-assessment that he was not a responsible person within the meaning of § 6672, and despite the fact that

the duties regarding the accounting and payment of employee withholding taxes were delegated to Anderson within the corporate structure, under the criteria established by the Tenth Circuit,[2] Arnett cannot prove that he was not a "responsible person." Arnett held corporate office, in part controlled financial affairs of TSP, had authority to disburse corporate funds, owned one share of stock, and had the ability to hire and fire employees. Under Tenth Circuit precedent, the fact that Arnett may not have had final say as to which creditors should have been paid or that he did not have the specific job within the corporate structure to pay taxes is immaterial given that there is otherwise "sufficient indicia of responsibility." *Taylor,* 69 F.3d at 416. Nor does the fact that Anderson was a responsible person, or even a person arguably more responsible, preclude Arnett from also being a responsible person within the meaning of § 6672. *See Denbo,* 988 F.2d at 1032.

■■■ Having concluded that Arnett is a responsible person, the next issue is whether his failure to pay the withholding taxes was willful. Arnett cannot escape his own admissions that he was aware of the delinquent withholding taxes. Therefore, Arnett had sufficient knowledge to trigger the duty to investigate or correct mismanagement.

The law appears clear that Arnett's conduct following notice of the delinquency fell short of his obligation under § 6672. *See Finley,* 82 F.3d at 972–73. Anderson's unsubstantiated verbal assurances that the matter would be taken care of is insufficient to preclude liability. This is particularly true in light of the fact that Arnett, a person in charge of balancing TSP's checkbook, had to know that no payments from TSP's checking account were being made to pay delinquent withholding taxes. The fact that Anderson occupied a higher position within the corporate hierarchy of TSP than Arnett apparently does not change this conclusion. *Cf. Gep-*

---

**2.** In support of his contention that he was not a "responsible person," Arnett relies on the Eighth Circuit's opinion in *Barton v. United States,* 988 F.2d 58 (8th Cir.1993). Although the facts of *Barton* contain some similarities to the dispute at bar, that case is factually distinguishable. Unlike the plaintiff in *Barton,* Arnett did not merely hold

corporate titles. Instead, Arnett possessed and exercised actual authority over TSP. Arnett also otherwise satisfies each of the criteria suggested by the Tenth Circuit for determining whether an individual is a responsible person within the meaning of § 6672.

*hart,* 818 F.2d at 475 ("[I]t is generally held that one who is a responsible person follows the directions of a superior not to pay withholding taxes to the government at his peril.").

In sum, constrained by binding precedent, the court is compelled to conclude that Arnett was a responsible person who willfully failed to collect, account for, or pay over federal employment taxes. The I.R.S. properly assessed the April 29, 1991, penalty to Arnett.

The United States is therefore entitled to summary judgment. The United States is entitled to the unpaid balance of the assessment, plus statutory interest from the date of the assessment. In its motion for summary judgment, the United States does not attempt to calculate the amount of interest owed by Arnett. As the court must enter judgment in a sum certain, additional briefs on the calculation of interest are necessary before judgment may be entered. The United States, within ten days of the date of this order, shall file a document which sets forth in detail its calculations for determining the amount of interest owed by Arnett regarding the April 29, 1991, assessment, taking into account all amounts already applied to the assessment. Within ten days of the date the United States files its brief, Arnett may file a response challenging the United States' calculations of the amount of interest owed.

IT IS THEREFORE ORDERED that the court, sua sponte, sets aside the court's May 21, 1996, order and reconsiders Rodney Arnett's "Motion for Summary Judgment" (Dk.45) on the merits. Rodney Arnett's "Motion for Summary Judgment" (Dk.45) is denied.

IT IS FURTHER ORDERED that the United States' "Motion for Summary Judgment" (Dk.42) is granted.

The clerk of the court shall not enter judgment until further order of the court.